GEORGE JOHNSTONE, petitioner.

Bristol. January 9, 2009. - April 9, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Sex Offender. Evidence,* Sex offender, Expert opinion.

Discussion of the statutory scheme contained in G. L. c. 123A, including the
  provisions creating the community access board, which evaluates persons
  previously found to be sexually dangerous, and the provisions governing
  an individual's ability to file a petition for examination and discharge from
  commitment once per year. [546-549]

This court concluded that in order for the Commonwealth to proceed to trial
  of a discharge petition filed pursuant to G. L. c. 123A, § 9, by a person
  who was committed civilly as a sexually dangerous person, at least one of
  the two qualified examiners must opine that the petitioner remains sexually
  dangerous, and where neither of the qualified examiners is of the opinion
  that the petitioner is currently a sexually dangerous person, the Com-
  monwealth cannot rely upon other sources of potential expert evidence,
  such as the opinion of the community access board that the petitioner is
  sexually dangerous, to meet its burden of proof at trial; further, this court
  concluded that given the integral role of the qualified examiners in the
  entire statutory scheme, the same reasoning applies as well to initial com-
  mitment proceedings brought pursuant to G. L. c. 123A, § 12 (*b*). [549-553]

PETITION filed in the Superior Court Department on January
10, 2003.

The case was tried before *Sandra L. Hamlin, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Mary P. Murray* for the Commonwealth.

*Robert E. Fox* for the petitioner.

COWIN, J. This case concerns the interplay between the role of
the qualified examiners and that of the community access board
(CAB) in discharge proceedings for sexually dangerous persons
pursuant to G. L. c. 123A, § 9. At the petitioner's discharge trial,
two qualified examiners who, under the statutory scheme, were
ordered by the court to examine the petitioner for sexual danger-

ousness, see *id.*, testified that the petitioner was not a sexually dangerous person. A member of the CAB, however, testified to the CAB's conclusion that the petitioner was sexually dangerous. The trial judge allowed the petitioner's motion for a directed verdict. The Appeals Court affirmed, concluding that the Commonwealth could not prevail at trial because neither the CAB member's testimony nor the CAB's report constituted expert evidence of current sexual dangerousness, as required by *Commonwealth* v. *Bruno*, 432 Mass. 489, 510-511 (2000), and *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 482 (2003). See *Johnstone, petitioner*, 72 Mass. App. Ct. 123, 131-135 (2008).

We granted the Commonwealth's application for further appellate review. The question presented is whether, at the trial of a petition for discharge under G. L. c. 123A, § 9, in which both qualified examiners form the opinion that the petitioner is no longer sexually dangerous, the testimony of a CAB member and the accompanying CAB report constitute evidence that is sufficient for the Commonwealth to avoid a directed verdict. For the reasons stated *infra*, we hold that it is not. If neither qualified examiner forms the opinion that the petitioner remains a sexually dangerous person, the Commonwealth may not obtain the expert evidence it needs from the CAB or other sources and the petitioner is entitled to be discharged without trial. We conclude further that the same reasoning applies to initial commitment proceedings pursuant to G. L. c. 123A, § 12 (*b*), and that the Commonwealth cannot proceed to trial thereunder when both qualified examiners opine that the person in question is not sexually dangerous.[1]

1. *Background.* The evidence presented at trial and the reasonable inferences the jury could have drawn from it are thoroughly summarized by the Appeals Court in its decision. See *Johnstone, petitioner, supra* at 124-130. For present purposes, it is sufficient to note the following. The petitioner, after serving a ten-year sentence at the Massachusetts Correctional Institution at

---

[1] Our decision in *Commonwealth* v. *Poissant*, 443 Mass. 558, 560 n.6 (2005), declined to resolve a similar question, "whether [G. L. c. 123A] implicitly requires that at least one of the qualified examiners support the position that a defendant is sexually dangerous in order for the Commonwealth to proceed to trial," in *initial* commitment proceedings brought pursuant to G. L. c. 123A, § 12 (*b*).

Concord for sex offenses he had committed in 1990 and 1991, was committed pursuant to G. L. c. 123A, § 14, as a sexually dangerous person. He subsequently filed a petition seeking his discharge from the commitment. See G. L. c. 123A, § 9. As required by that section, the petitioner was examined by two qualified examiners, and each concluded that he was no longer sexually dangerous. However, after meeting with the petitioner and members of his treatment team, the members of the CAB unanimously reached the opposite conclusion in their annual review of the petitioner's sexual dangerousness.

The case was tried to a jury in the Superior Court. At trial, both qualified examiners testified on behalf of the petitioner, opining that the petitioner was no longer sexually dangerous. Through the oral testimony of one of the CAB's members (who had also been designated a qualified examiner, but did not serve in that capacity in this case), the Commonwealth introduced the CAB report concluding that the petitioner remained sexually dangerous.[2] As mentioned, the judge allowed the petitioner's motion for a directed verdict, the Appeals Court affirmed, and we granted further appellate review. We agree that the petitioner's motion for a directed verdict was properly allowed, although for a reason different from that of the Appeals Court, and we affirm the judgment.

2. *Statutory scheme.* If there is probable cause to believe that a person who has been convicted of a sex offense is "sexually dangerous,"[3] the Commonwealth may file a petition seeking to have that person confined beyond the term of his criminal sen-

---

[2] A second community access board (CAB) member, who did not testify, had also been designated a qualified examiner. However, like the CAB member who did testify, the second CAB member did not serve in that capacity in this case.

[3] General Laws c. 123A, § 1, defines a "[s]exually dangerous person" as "any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive

tence. See G. L. c. 123A, § 12. If a Superior Court judge is satisfied that there is probable cause to believe a person is sexually dangerous, the person shall be committed to the Massachusetts Treatment Center (treatment center) for up to sixty days so that two "qualified examiners"[4] may conduct an examination and diagnosis. See G. L. c. 123A, § 13 (*a*). The qualified examiners must "file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."[5] *Id.*

Following this examination by the qualified examiners, the Commonwealth may petition the court for a trial to determine whether the person is a sexually dangerous person. See G. L. c. 123A, § 14 (*a*). A jury trial must then be held to determine whether the person is sexually dangerous, but the person may waive his right to a jury. *Id.* If the jury unanimously find "beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life." G. L. c. 123A, § 14 (*d*).

General Laws c. 123A, § 6A, created the CAB which, inter alia, evaluates persons previously found to be sexually dangerous. The CAB must "conduct annual reviews of and prepare reports on the current sexual dangerousness of all persons at the treatment center, including those whose criminal sentences have not expired." *Id.* The CAB is also responsible for administering a

---

sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[4]Under G. L. c. 123A, § 1, a "qualified examiner" must be a licensed psychiatrist or psychologist who "has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction."

[5]To facilitate this examination, the qualified examiners are provided access to all of the person's mental health and juvenile and adult court records and "such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation." G. L. c. 123A, § 13 (*b*). This documentation is also to be provided to the person's counsel, the district attorney, and the Attorney General. G. L. c. 123A, § 13 (*c*).

"community access program."[6] *Id.* To that end, the CAB "evaluate[s] residents for participation in the community access program and establish[es] conditions to ensure the safety of the general community." *Id.* Section 6A further provides that the CAB "shall have access to all records of the person being evaluated and shall give a report of its findings, including dissenting views, to the chief administrative officer of the [treatment] center." *Id.* The CAB's membership "shall include three department of correction employees and two persons who are not department of correction employees, but who may be independent contractors or consultants. The [nonemployee] members shall consist of psychiatrists or psychologists licensed by the [C]ommonwealth."[7] *Id.* The statute also makes the CAB report admissible in discharge proceedings conducted pursuant to G. L. c. 123A, § 9.

Once a person is committed to the treatment center, he may file a petition for examination and discharge once per year, seeking his release on the ground that he is no longer a sexually dangerous person. See G. L. c. 123A, § 9. Either the petitioner or the Commonwealth may demand that the discharge petition be tried by a jury. *Id.* Upon the filing of a petition for discharge, the judge "shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person." *Id.* If the petitioner "refuses, without good cause, to be personally interviewed by a qualified examiner

---

[6]General Laws c. 123A, § 6A, refers to the "community access program," which is defined in G. L. c. 123A, § 1, as "a program . . . that provides for a person's reintegration into the community." General Laws c. 123A, § 6A, states that "[o]nly a person whose criminal sentence has expired or upon whom a criminal sentence was never imposed shall be entitled to apply for participation in a community access program once in every twelve months." "Any person participating in a community access program under this section shall continue to reside within the secure confines of [the Massachusetts Correctional Institution at] Bridgewater and be under daily evaluation by treatment center personnel to determine if he presents a danger to the community." *Id.*

[7]The statute does not explicitly require that the psychologists or psychiatrists who serve on the CAB meet the statutory qualifications of "qualified examiners" under G. L. c. 123A, § 1.

appointed pursuant to this section," then the petition may be dismissed on the Commonwealth's motion. *Id.*

The qualified examiners' reports are admissible at the trial of the petition, as is "[e]vidence of the [petitioner's] juvenile and adult court and probation records, psychiatric and psychological records, the department of correction's updated annual progress report of the petition, including all relevant materials prepared in connection with the [G. L. c. 123A, § 6A,] process,[8] and any other evidence that tends to indicate that he is a sexually dangerous person . . . ." G. L. c. 123A, § 9. "Unless the trier of fact finds that [the petitioner] remains a sexually dangerous person, [the judge] shall order [the petitioner] to be discharged from the treatment center." *Id.*

3. *Discussion.* The requirement of expert evidence is not expressly contained in the text of G. L. c. 123A. However, the absence of explicit language in the statute does not end the analysis. "While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977). Therefore, in order for the person to be involuntarily committed for an indefinite period, substantive due process requires the Commonwealth to prove that a person is likely to pose a danger to others if released because he suffers from a "mental illness, abnormality, or disorder" that causes that person to have "serious difficulty in controlling [his] behavior." See *Kansas* v. *Crane*, 534 U.S. 407, 412-413 (2002). See also *Kansas* v. *Hendricks*, 521 U.S. 346, 356-358 (1997); *Dutil, petitioner*, 437 Mass. 9, 17-18 (2002).

Because the trier of fact in G. L. c. 123A proceedings must decide "[w]hether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense," and because these are "matters beyond the range of ordinary experience," expert evidence

[8]These materials include the CAB's reports pertaining to its annual reviews of the current sexual dangerousness of treatment center residents. See G. L. c. 123A, §§ 6A, 9.

is required in order to commit a person to the treatment center or to keep a person confined there. *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 483 n.12 (2003), quoting *Commonwealth* v. *Bruno, supra* at 511. As the Commonwealth observes, Massachusetts courts have not required that expert evidence of a person's current sexual dangerousness be supplied only by the qualified examiners in G. L. c. 123A proceedings. See *Commonwealth* v. *Poissant*, 443 Mass. 558, 560 n.6 (2005). The statute does not state that a qualified examiner's opinion that a person is currently sexually dangerous is necessary for the trier of fact to conclude that the person should be, or remain, committed under G. L. c. 123A. We must determine in this case whether the statutory scheme implicitly creates such a role for the qualified examiners.

The petitioner in this case makes no argument that the CAB's report is inadmissible. Rather, he argues that, notwithstanding the CAB's conclusion that the petitioner is sexually dangerous, the Commonwealth cannot meet its burden without an opinion from at least one qualified examiner that the petitioner remains sexually dangerous. The petitioner bases his argument on the central role of the qualified examiners in the statutory scheme as a whole. The logical implication of his position is that, absent the opinion of at least one qualified examiner that the petitioner remains sexually dangerous, the petitioner is entitled to be discharged from commitment.[9]

The Commonwealth's position is that, although the decisions in *Commonwealth* v. *Bruno, supra* at 510-511, and *Commonwealth* v. *Dube, supra*, require expert evidence, neither decision requires that evidence to come only from the qualified examiners, and that G. L. c. 123A does not, by its terms, require at least one qualified examiner to opine that a person is sexually dangerous for the Commonwealth to prevail in a sexually dangerous person proceeding. The Commonwealth therefore argues that, where both of the qualified examiners form the opinion that the petitioner

[9]While the discharge procedure is the one at issue in this case, the petitioner's logic is derived from the central role of the qualified examiners in the entire statutory scheme established by G. L. c. 123A. Therefore, the same reasoning would also apply to initial commitment proceedings brought pursuant to G. L. c. 123A, § 12 (*b*).

is not sexually dangerous, it may rely on the contrary opinion of the CAB to supply the expert evidence required under the *Bruno* and *Dube* decisions. The Commonwealth relies mainly on the CAB's statutory function of "conduct[ing] annual reviews of and prepar[ing] reports on the current sexual dangerousness of all persons at the treatment center." See G. L. c. 123A, § 6A. The Commonwealth maintains that the CAB's statutory duties indicate that the Legislature meant the CAB to be an "expert body" that may, as an alternative to the qualified examiners, supply the required expert evidence of current sexual dangerousness. The Commonwealth also relies on the fact that §§ 6A and 9 explicitly state that the CAB report "shall be admissible" in discharge proceedings. G. L. c. 123A, §§ 6A, 9.

While, as indicated, the statute does not answer the question explicitly, we conclude that the petitioner's position is the more persuasive. "There can be no question that qualified examiners are central to the statutory scheme designed to evaluate the likelihood of a sex offender to reoffend." *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 283-284 (2004). Within that scheme, the qualified examiners are established as independent, court-appointed experts. See *Commonwealth* v. *Connors*, 447 Mass. 313, 314 n.2 (2006). They are integral to nearly every step of the civil commitment process set out in G. L. c. 123A. See part 2, *supra*. Indeed, the qualified examiners are the starting point for the indefinite commitment process under G. L. c. 123A, §§ 13-14, and also for discharge proceedings under § 9. Whenever the qualified examiners perform their evaluations, they are required to file their reports and recommendations with the court. *Id.* It is significant that they are the only experts appointed by the court under c. 123A, and are also the only experts who must file their reports and recommendations with the court. Because of the central role of the qualified examiners in the commitment process, the Legislature has mandated them to possess certain minimum qualifications, i.e., that they be licensed psychologists or psychiatrists and that they have at least two years' experience in the diagnosis or treatment of sexually aggressive offenders. See G. L. c. 123A, § 1.

In addition, as previously noted, if the petitioner in a discharge proceeding refuses to be personally interviewed by examiners

and lacks good cause for doing so, "such person shall be deemed to have waived his right to a hearing on the petition and the petition shall be dismissed upon motion filed by the [C]ommonwealth." G. L. c. 123A, § 9. When interviewed by the qualified examiners, the petitioner may interpose either the psychotherapist-patient privilege of G. L. c. 233, § 20B, or the privilege against self-incrimination, but doing so precludes the petitioner from offering the opinion of his own expert at trial. See *Commonwealth* v. *Connors, supra* at 318-320. The fact that a petitioner's refusal to be interviewed by a qualified examiner is effectively penalized is further support for the conclusion that the Legislature intended the examiners to play an essential role in the discharge process.[10]

The statutory scheme therefore expressly sets the qualified examiners apart from other sources of expert evidence. Indeed, the role of the qualified examiners within that scheme persuades us that the Legislature intended them to serve in a capacity similar to that of a gatekeeper, deciding whether a person warrants commitment as a sexually dangerous person. Implicit in this view is the conclusion that, if both qualified examiners determine that a person is not sexually dangerous, the Commonwealth cannot meet its burden of proof. Assuming without deciding that an opinion of current sexual dangerousness included in a CAB report constitutes expert evidence of the kind that we have required in *Commonwealth* v. *Bruno, supra*, the CAB's opinion cannot serve as a substitute for those of the qualified examiners under the statutory scheme created by G. L. c. 123A. Allowing the Commonwealth to rely on other potential sources of expert testimony, such as the CAB, to prove the petitioner's current sexual dangerousness, in the face of the contrary opinions of both the appointed qualified examiners, would deny the examiners their place in the statutory scheme.

Contrary to the Commonwealth's argument, the fact that the CAB has been directed by the Legislature to "conduct annual reviews of and prepare reports on the current sexual dangerousness of all persons at the treatment center" does not by itself mean that the CAB's report alone can be sufficient evidence of

---

[10]It is also noteworthy that there is no corresponding provision in G. L. c. 123A penalizing a petitioner's refusal to be interviewed by the CAB.

current sexual dangerousness. Similarly, the mere fact that the statute specifically makes the CAB report admissible does not mean that the CAB report alone constitutes sufficient expert evidence. Indeed, the same sentence of G. L. c. 123A, § 9, makes many items admissible that would not in any sense supply expert evidence, such as the petitioner's court records and the department of correction's annual progress report.

4. *Conclusion.* We hold that, in order for the Commonwealth to proceed to trial in a discharge proceeding under G. L. c. 123A, § 9, at least one of the two qualified examiners must opine that the petitioner remains sexually dangerous. If neither of the qualified examiners is of the opinion that the petitioner is currently a sexually dangerous person, the Commonwealth cannot rely upon other sources of potential expert evidence, such as the CAB's opinion that the petitioner is sexually dangerous, to meet its burden of proof at trial. Because our decision is based on the integral role of the qualified examiners in the entire statutory scheme, the same reasoning applies as well to initial commitment proceedings brought pursuant to G. L. c. 123A, § 12 (*b*).[11]

*Judgment affirmed.*

---

[11]Because of our decision, we need not address other issues raised by the Commonwealth in its appeal.