NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13437

CONRAD MURPHY vs. COMMISSIONER OF CORRECTION & others.[1]


Suffolk.     October 2, 2023. - December 14, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Parole.  Sex Offender.  Commissioner of Correction.
    Constitutional Law, Parole, Sex offender.  Due Process of
    Law, Parole, Sex offender, Commitment.  Practice, Civil,
    Sex offender, Civil commitment, Action in nature of
    certiorari.  Statute, Construction.




    Civil action commenced in the Superior Court Department on
February 15, 2022.

    The case was heard by Catherine H. Ham, J., on motions for
judgment on the pleadings.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Mary P. Murray for the defendants.
    Matthew J. Koes for the plaintiff.
    Rebecca Rose, for Committee for Public Counsel Services,
amicus curiae, submitted a brief.


───────────────────

    [1] Superintendent, Massachusetts Treatment Center; and
Secretary of the Executive Office of Public Safety and Security.

GAZIANO, J.  The issues before this court stem from a policy of the Department of Correction (DOC) declaring that civilly committed individuals categorically are ineligible for medical parole under G. L. c. 127, § 119A.  The plaintiff, a civilly committed sexually dangerous person, petitioned the DOC for medical parole.  The DOC denied his petition, writing:  "Per the DOC's Medical Parole Policy . . . persons awaiting trial and persons civilly committed pursuant to [G. L.] c. 123A shall not be deemed inmates for purpose of [determining eligibility for medical parole under] this regulation, therefore [the plaintiff] is not eligible for medical parole."  After the plaintiff sought review of this denial pursuant to G. L. c. 249, § 4, a Superior Court judge allowed his motion for judgment on the pleadings, concluding that his due process rights had been violated.  The judge ordered the DOC to conduct a hearing on the plaintiff's medical parole petition.  We reverse the judge's order and hold that the medical parole statute applies only to committed offenders serving a criminal sentence, not civilly committed sexually dangerous persons.  Furthermore, sexually dangerous persons may seek release due to terminal illness or physical or mental incapacity under G. L. c. 123A, § 9 (§ 9); denying them

an additional avenue for relief by means of the medical parole statute does not offend substantive due process.[2]

1.  Background.  a.  Criminal case.  The plaintiff was convicted of indecent assault and battery in September 1987. After two additional convictions for sexually violent conduct, the plaintiff pleaded guilty to charges of mayhem, indecent assault and battery, assault with intent to rape, armed assault with intent to murder, and assault and battery with a dangerous weapon in December 1989.  The 1989 convictions arose from an incident in which the plaintiff induced a sixteen year old girl to enter his apartment, beat her with a hammer, threatened to kill her, and sexually assaulted her.  He was sentenced to concurrent prison terms of from fourteen to seventeen years on the convictions of mayhem, assault with intent to rape, and armed assault with intent to murder; a concurrent term of from three to five years on the conviction of indecent assault and battery; and a term of from eight to ten years, suspended with three years of probation, on the conviction of assault and battery with a dangerous weapon.

b.  Civil commitment.  Near the end of the plaintiff's sentence, the Commonwealth moved to commit him as a sexually dangerous person.  The plaintiff was adjudged to be a sexually

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of the plaintiff.

dangerous person on August 6, 2010, and civilly committed to the Massachusetts Treatment Center (treatment center) for a period of from one day to life. See G. L. c. 123A, § 14 (d). He since has filed two petitions for examination and discharge under § 9, one in 2016 and the other in 2020. Both times, a jury found that the plaintiff remained a sexually dangerous person.

c. Medical parole petition. In January 2022, the plaintiff also filed a petition pursuant to G. L. c. 127, § 119A (medical parole statute). Due to the plaintiff's health issues, including lymphedema (i.e., swelling caused by lymphatic system damage or blockage), venous insufficiency, and spinal stenosis, he alleged that his medical condition had deteriorated to the point of physical incapacity. In support of his petition, the plaintiff submitted medical records, including his treatment plan, laboratory results, and medical status forms from October 2021 to January 2022. The DOC denied the plaintiff's medical parole petition the day after he submitted it, citing the DOC's policy that those awaiting trial or those civilly committed pursuant to G. L. c. 123A are ineligible for medical parole.[3]

---

[3] The DOC policy provides that although "an inmate may be eligible for medical parole due to terminal illness or permanent incapacitation," 103 DOC § 603.02(A) (2022), persons who have been civilly committed (such as sexually dangerous persons) are not included within the definition of an "inmate." See 103 DOC § 603.01 (2022) ("Persons who are awaiting trial and persons civilly committed shall not be deemed inmates for the purposes of this policy"). Title 501 Code Mass. Regs. § 17.02 (2022), a

The plaintiff sought review of the DOC's denial in the Superior Court pursuant to G. L. c. 249, § 4, naming the Commissioner of Correction (commissioner), the superintendent of the treatment center, and the Secretary of the Executive Office of Public Safety and Security as defendants in his petition. After the parties filed cross motions for judgment on the pleadings, in November 2022 the judge granted the plaintiff's motion in part, denied the defendants' motion, and ordered that the DOC conduct a hearing to consider the merits of the plaintiff's medical parole petition.

The defendants timely appealed from the judge's decision to the Appeals Court. Thereafter, the judge granted a request by the defendants to stay her order, pending the defendants' appeal. We transferred the appeal to this court on our own motion.

2. Discussion. The plaintiff appeals from the denial of medical parole under G. L. c. 127, § 119A (g), which provides that a prisoner who is aggrieved by such a denial may petition for relief by filing an action in the nature of certiorari pursuant to G. L. c. 249, § 4. Certiorari is a "limited

_____

regulation promulgated by the Executive Office of Public Safety and Security pursuant to G. L. c. 127, § 119A (h), similarly provides that "[p]ersons who are awaiting trial and persons civilly committed shall not be deemed prisoners," as that term is used under the medical parole statute.

procedure" reserved for correcting "substantial errors of law" (citation omitted).  Abner A. v. Massachusetts Interscholastic Athletic Ass'n, 490 Mass. 538, 546 (2022).  While "[t]he proper standard of review under the certiorari statute is flexible and case specific, . . . ultimately [the review must] turn on whether the agency's decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise an error of law" (citation omitted).  Langan v. Board of Registration in Med., 477 Mass. 1023, 1025 (2017).  Here, whether the DOC's decision to deny the plaintiff's petition for medical parole was based on an error of law depends on a reading of the statutory schemes at issue -- G. L. c. 123A and G. L. c. 127, § 119A.

a.  Applicable law.  General Laws c. 123A (SDP statute) is a civil statute that sets out the care, treatment, and rehabilitation of sexually dangerous persons.  See Dutil, petitioner, 437 Mass. 9, 20 (2002) ("We have repeatedly held that the Legislature intended G. L. c. 123A as a civil statute").  This statute balances the dual concerns of protecting the public, on the one hand, and preserving individual liberty, on the other.  Chapman, petitioner, 482 Mass. 293, 308 (2019).  See LeSage, petitioner, 488 Mass. 175, 181-182 (2021) (government has legitimate and compelling interest in protecting public from those likely to be sexually dangerous).

Once an individual is found to be a sexually dangerous person, that individual may be released from civil commitment only after a finding that the individual no longer is sexually dangerous. See Conlan v. Commonwealth, 383 Mass. 871, 872 (1981). See also G. L. c. 123A, § 14 (d) (sexually dangerous person "shall be committed to the treatment center . . . until discharged pursuant to the provisions of [§] 9"). Under § 9, a sexually dangerous person may file an annual petition for examination and discharge. See G. L. c. 123A, § 9. See also Trimmer, petitioner, 375 Mass. 588, 591 (1978) (purpose of § 9 is to provide "periodic redeterminations" whether individual remains sexually dangerous). Section 9 does not set out an explicit timeline under which this petition must be heard, although a petitioner has an express right to a "speedy hearing." G. L. c. 123A, § 9 ("The petitioner shall have a right to a speedy hearing on a date set by the administrative justice of the superior court"). See LeSage, 488 Mass. at 180. See also Chapman, 482 Mass. at 302 (noting that it may take years to schedule § 9 petition for trial).

Once a sexually dangerous person files a § 9 petition, the judge then orders examination of the petitioner by two qualified examiners. See G. L. c. 123A, § 9. Qualified examiners are experts who, after evaluating the petitioner, opine whether the petitioner remains sexually dangerous. See Johnstone,

petitioner, 453 Mass. 544, 553 (2009).  See also Chapman, 482 Mass. at 303.  Qualified examiners serve a uniquely "central" role in the commitment process, and the Legislature requires them to possess certain minimum qualifications.  See Johnstone, supra at 551-552 ("The statutory scheme therefore expressly sets the qualified examiners apart from other sources of expert evidence").  Qualified examiners consider a variety of factors in their assessments whether an individual remains sexually dangerous, including a sexually dangerous person's age and medical status.  See Chapman, supra at 297.

If both qualified examiners opine that an individual is no longer sexually dangerous, that individual must be discharged; if at least one qualified examiner instead opines that an individual remains sexually dangerous, a trial is held on the § 9 petition.  See LeSage, 488 Mass. at 180.  If the matter proceeds to trial, the qualified examiner reports are admissible at trial.  G. L. c. 123A, § 9.  The Commonwealth must then prove beyond a reasonable doubt that the petitioner remains sexually dangerous at the time of trial.  See LeSage, supra at 180-181. See also Commonwealth v. Fay, 467 Mass. 574, 585 n.13, cert. denied, 574 U.S. 858 (2014).  There is no provision for conditional release once a sexually dangerous person is found no longer sexually dangerous.  See G. L. c. 123A, § 14 (d).  See also Commonwealth v. Bruno, 432 Mass. 489, 502 (2000).

Petitioners may move the court to expedite the date of the § 9 hearing, which the court then may allow pursuant to its inherent authority. See Commonwealth v. Rosa, 491 Mass. 369, 372-373 (2023) (courts have wide discretion on setting timeline for when case goes to trial); Bower v. Bournay-Bower, 469 Mass. 690, 699 (2014) ("courts possess inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases'" [citation omitted]). See also Rule 20(2)(c), (3) of the Rules of the Superior Court (2018) (parties may request "[i]mmediate scheduling of a prompt and firm trial date").

Different factors motivated the Legislature in enacting the medical parole statute in 2018. Specifically, the Legislature was concerned with several trends, notably, "the aging prison population, the rising cost of health care, and the fact that elderly infirm prisoners are 'considered among the least likely to re-offend when released'" (citation omitted). Buckman v. Commissioner of Correction, 484 Mass. 14, 21 (2020). See Harmon v. Commissioner of Correction, 487 Mass. 470, 472 (2021). Under the medical parole statute, prisoners are eligible for medical parole if they are either terminally ill or permanently incapacitated. See G. L. c. 127, § 119A (b). A prisoner or authorized person may file a petition with either the superintendent of the correctional facility or the sheriff in

charge of the house of correction or jail where the prisoner is serving his sentence. See Emma v. Massachusetts Parole Bd., 488 Mass. 449, 452 (2021), citing G. L. c. 127, § 119A (c) (1), (d) (1). After receiving a petition, the superintendent or sheriff has twenty-one days to consider the petition and make a recommendation to the commissioner. Emma, supra. The commissioner then has forty-five days to issue a written decision accompanied with a statement of reasons. See id., citing G. L. c. 127, § 119A (e). If the petition is granted, the prisoner is then released subject to any necessary conditions. See Emma, supra at 453. See also G. L. c. 127, § 119A (f). If the petition is denied, the prisoner may seek certiorari review. See G. L. c. 127, § 119A (g).

b. Statutory interpretation. The issue before this court is whether the medical parole statute applies to civilly committed sexually dangerous persons. This is not the first time we have been called on to interpret the medical parole statute for purposes of determining its applicability to a particular class of persons. In Harmon, 487 Mass. at 478, we addressed whether the medical parole statute applied to pretrial detainees. We held it did not. Id. at 481. We began with examining the statute's plain language and found the term "prisoner" ambiguous. Id. at 479. After considering the Legislature's intent in enacting this statute, we held that the

"most important term" in the statute was not "prisoner" but, rather, "parole." Id. Based on the ordinary definition of parole, we held that the medical parole statute applied only to prisoners eligible for ordinary parole. Id. at 480.[4] We further reasoned that because pretrial detainees had an alternative avenue to seek relief, this interpretation was consistent with the purpose underlying the medical parole statute. See id. (Legislature was concerned with aging prison population whose sole recourse for release was executive clemency).

Our interpretation of the medical parole statute in Harmon controls the outcome here. Simply put, sexually dangerous persons are ineligible for ordinary parole. See Bruno, 432 Mass. at 502 (G. L. c. 123A "does not provide less restrictive alternatives to commitment"). Thus, like pretrial detainees, sexually dangerous persons are not eligible for medical parole under G. L. c. 127, § 119A. Furthermore, because sexually dangerous persons "who develop terminal or debilitating medical issues . . . have another avenue by which to seek relief" -- that is, § 9 -- excluding sexually dangerous persons from eligibility for medical parole does not frustrate the Legislature's purpose in enacting G. L. c. 127, § 119A. Harmon,

---

[4] The plaintiff argues that the prisoner definition in G. L. c. 125, § 1 (m), should control our interpretation of the medical parole statute. That argument was addressed and found unavailing in Harmon, 487 Mass. at 479.

487 Mass. at 480. See Chapman, 482 Mass. at 297 (former sexually dangerous person released from civil commitment based on qualified examiners' findings that his age and medical condition rendered him no longer sexually dangerous). Accordingly, because civilly committed sexually dangerous persons are categorically ineligible for medical parole under G. L. c. 127, § 119A, the DOC's denial of the plaintiff's petition for medical parole was not an error of law.

c. Substantive due process. The judge concluded in her order, and the plaintiff argues on appeal, that the plaintiff's substantive due process rights were violated when the DOC failed to consider the plaintiff's medical parole petition on its merits. It bears noting at the outset that we have repeatedly held that the civil commitment of sexually dangerous persons under the SDP statute does not violate substantive due process under the State or Federal constitution. See Commonwealth v. Knapp, 441 Mass. 157, 166 (2004) ("we conclude that the confinement of [a sexually dangerous person] is narrowly tailored to the Legislature's expressed interest in protecting the public from harm by persons convicted of sexual offenses who are likely to be sexually dangerous"). See also LeSage, 488 Mass. at 181, 190; Commonwealth v. G.F., 479 Mass. 180, 192-193 (2018); Bruno, 432 Mass. at 504. Neither does the categorical ineligibility of civilly committed sexually dangerous persons to

petition for medical parole under G. L. c. 127, § 119A, violate their due process rights.

"Substantive due process prohibits governmental conduct that 'shocks the conscience' or infringes on rights 'implicit in the concept of ordered liberty'" (citation omitted).  G.F., 479 Mass. at 191.  The nature of the right at stake determines the standard of review we apply.  See Vega v. Commonwealth, 490 Mass. 226, 231 (2022).  Because the process outlined in § 9 infringes on a fundamental right -- freedom from physical restraint -- we apply strict scrutiny.  Id.  See Kligler v. Attorney Gen., 491 Mass. 38, 55 (2022).  To withstand strict scrutiny, "government conduct that infringes on a fundamental right must be narrowly tailored to further a compelling and legitimate government interest."  LeSage, 488 Mass. at 181.  See Commonwealth v. DiBenedetto, 491 Mass. 390, 401-402 (2023).  The government interest animating the SDP statute is the protection of the public from harm by persons likely to be sexually dangerous.  See LeSage, supra at 181-182.  See also Bruno, 432 Mass. at 504 (SDP statute reflects "Legislature's concern with protecting the public from harm by persons who are soon to be released and who are likely to be sexually dangerous").

The judge held that § 9 violates the plaintiff's substantive due process rights due to both the plaintiff's inability to petition for release solely based on his medical

condition and the length of time the plaintiff must wait to be heard on his § 9 petition. We disagree. If a sexually dangerous person can show that his medical condition is so compromised that he no longer is sexually dangerous, § 9 provides that such an individual will be released. For instance, in Chapman, 482 Mass. at 297, a sexually dangerous person was found no longer sexually dangerous due to "the combination of [his] age and his deteriorating physical condition resulting in him no longer being able to manage independently." Moreover, the plaintiff may seek expedited review of a decision denying release based on terminal illness or physical or mental incapacity.[5] See part 2.a, supra.

3. Conclusion. For the reasons discussed, we conclude that civilly committed sexually dangerous persons categorically are ineligible for medical parole under G. L. c. 127, § 119A, and that this ineligibility does not violate sexually dangerous persons' due process rights. Accordingly, the order granting the plaintiff's motion for judgment on the pleadings is reversed, and judgment shall enter for the defendants.

So ordered.

---

[5] Here, the plaintiff has not attempted to expedite his § 9 petition.