MACKIE, COMMONWEALTH vs., 100 Mass. App. Ct. 78

 
 COMMONWEALTH vs. GEORGE MACKIE.

100 Mass. App. Ct. 78
 May 10, 2021 - July 29, 2021

Court Below: Superior Court, Worcester County
Present: Milkey, Henry, & Singh, JJ.

 

Sex Offender. Evidence, Sex offender, Police report, Hearsay, Expert opinion, Prior misconduct, Criminal records, Guilty plea, Prior conviction. Due Process of Law, Sex offender, Adjudicatory proceeding. Constitutional Law, Confrontation of witnesses, Sex offender. Witness, Expert. Practice, Civil, Hearsay, Instructions to jury, Sex offender, Civil commitment.

In proceedings to commit the defendant to the Massachusetts Treatment Center for an indefinite period as a sexually dangerous person, the evidence provided ample basis for a rational juror to conclude, beyond a reasonable doubt, that the defendant exhibited intense sexual urges toward prepubescent children that recurred over a period of at least six months. [82-83]

In proceedings to commit the defendant to the Massachusetts Treatment Center for an indefinite period as a sexually dangerous person, the judge erred in admitting police reports setting forth prior allegations against the defendant related to a sexual offense within the meaning of G. L. c. 123A, § 14 (c), where the sexual nature of the assault and battery offenses to which the defendant had pleaded guilty was never proved, admitted, or otherwise established, and the reports plainly otherwise constituted inadmissible hearsay; further, where this court could not say that the jury's verdict was not affected by their learning the allegations set forth in those reports, a new trial was warranted. [83-89]

This court discussed issues likely to arise on retrial of a petition to commit the defendant to the Massachusetts Treatment Center for an indefinite period as a sexually dangerous person. [89-91]

CIVIL ACTION commenced in the Superior Court Department on June 19, 2018.

 The case was tried before Susan E. Sullivan, J.

 John S. Day for the defendant.

 Donna-Marie Haran, Assistant District Attorney, for the Commonwealth.

 MILKEY, J. A Superior Court jury found that the defendant was a "sexually dangerous person" (SDP) within the meaning of G. L. c. 123A, § 1. Accordingly, the trial judge entered an order committing him to the Massachusetts Treatment Center for an indefinite

 Page 79 

 period. On appeal, the defendant principally challenges the Commonwealth's reliance on police reports and other documentary material that set forth allegations that he had committed various sexual offenses for which he never was convicted. The defendant repeatedly opposed the introduction of such evidence in a pretrial motion in limine and during the trial. The judge admitted the challenged evidence, relying in great part on our decision in Commonwealth v. Starkus, 69 Mass. App. Ct. 326 (2007). We agree with the defendant that, notwithstanding Starkus, the admission of some of the evidence was error, and that a new trial is warranted. We disagree with the defendant's separate argument that the Commonwealth's evidence was legally insufficient to support his adjudication as an SDP.

 Background. 1. The 2003 indictments and 2006 plea bargain. In 2003, the defendant was indicted for ten sexual offenses involving a twelve year old boy whom the defendant recently had adopted. The litany of charges regarding the boy, to whom we refer by the pseudonym Cole, included rape of a child (two counts); rape (two counts); indecent assault and battery on a child under the age of fourteen (two counts); indecent assault and battery on a person aged fourteen or older (two counts); open and gross lewdness; and dissemination of matter harmful to a minor. The allegations that Cole had made were detailed in reports from the Shirley and Ayer police. [Note 1]

 In 2006, the 2003 case was resolved through a plea agreement in which the defendant pleaded guilty only to two counts of assault and battery, which were treated as lesser included offenses of the indictments for indecent assault and battery of a person under the age of fourteen. [Note 2] The indictment for disseminating material harmful to a minor was dismissed, and the other indictments were placed on file without a change of plea. A transcript of the plea colloquy in that case was not admitted in evidence at the SDP trial and is not before us.

 Page 80 

 2. The 2009 case. In 2009, a Superior Court jury convicted the defendant of two counts of rape of a child. The victim of those rapes was a thirteen year old boy to whom we refer by the pseudonym Allen. According to the police report regarding these incidents, the defendant had "groomed" Allen by purchasing him presents and showing him pornography, among other things. [Note 3] The police report also referenced evidence that the defendant during the same time period similarly had tried to groom an eleven year old boy to whom we refer by the pseudonym Brent. Allen and Brent knew each other, and the defendant sometimes met them together. The defendant was not charged with any sexual misconduct involving Brent.

 3. The SDP trial. Near the conclusion of the defendant's prison sentence for the rapes of Allen, the Commonwealth petitioned to have him confined as an SDP. As required by G. L. c. 123A, § 13 (a), the defendant was examined by two qualified examiners (QEs). See Johnstone, petitioner, 453 Mass. 544, 547 (2009) (discussing role of QEs in SDP process). One of the QEs, Dr. Robert H. Joss, concluded that the defendant met the criteria to be classified as an SDP. At the trial, the Commonwealth called Dr. Joss as its principal witness. In proving the underlying facts, the Commonwealth relied principally on documentary evidence, such as the police reports relating to the incidents involving Cole, Allen, and Brent. The information contained in the police reports was also repeated in the QE report prepared by Dr. Joss, which separately was admitted as an exhibit. The Commonwealth called two additional witnesses, whose testimony amounted to fifteen total pages of transcript. [Note 4]

 Prior to trial, the defendant filed a motion in limine seeking to exclude the Commonwealth's evidence insofar as it provided evidence of sex offenses for which he never was convicted. The defendant especially focused on the material that laid out Cole's allegations. The judge denied this portion of the motion. In concluding that the documentary material regarding Cole was admissible, the judge expressly relied on our decision in Starkus.

 Page 81 

 The allegations that Cole and Brent made were conveyed to potential jurors even before the trial began, because the judge included them in the pretrial summary of the case that she provided to the jury venire. In fact, apparently drawing from the substance of the police reports, which had been repeated in Dr. Joss's QE report, the judge presented to the venire the allegations that Cole and Brent had made as unqualified statements of fact. [Note 5] During the trial itself, the judge admitted the police reports and other documentary evidence detailing Cole's and Brent's allegations over the defendant's repeated objections. [Note 6]

 The defendant testified in his own behalf. He stated that during his 2006 plea colloquy, he did not admit to facts supporting any charge that he sexually assaulted Cole. Although the Commonwealth questions the defendant's credibility, it makes no claim that he admitted to the sexual nature of the assault and battery to which he pleaded guilty. As noted, the plea colloquy itself is not before us. On the current record, it appears that the defendant consistently has denied ever committing any sexual offense with respect to Cole, and admits only to having restrained Cole as a form of discipline. In his trial testimony, the defendant also denied that he had raped Allen even though a jury had convicted him of those charges.

 In addition to his own testimony, the defendant called two experts to testify to why they believed that he did not meet the

 Page 82 

 criteria of an SDP. One was the other QE who had examined the defendant, Dr. Gregg Anthony Belle. The other was Dr. Joseph J. Plaud, an independently retained forensic psychologist. At one point during cross-examination, the prosecutor had Dr. Belle confirm that in applying the actuarial model known as the "Static-99R" test to the defendant, Dr. Belle had assumed that the defendant had been charged with sex offenses against victims other than Allen.

 Discussion. 1. Sufficiency. In order to prove that the defendant was an SDP, the Commonwealth had to establish, among other things, that he suffered from a "mental abnormality or personality disorder." G. L. c. 123A, § 1 (definition of "sexually dangerous person"). As laid out in the testimony and report of Dr. Joss, the Commonwealth's theory of the case was that the defendant suffered from the mental abnormality known as "pedophilic disorder." The defendant argues that the Commonwealth's proof on this issue was legally insufficient. For the following reasons, we disagree.

 In assessing the legal sufficiency of the Commonwealth's evidence, we, of course, view the evidence in the light most favorable to the Commonwealth, including by drawing all reasonable inferences in the Commonwealth's favor. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). See also Souza, petitioner, 87 Mass. App. Ct. 162, 169 (2015) (applying Latimore test to SDP adjudication). In addition, we consider all the evidence that was admitted, "without regard to the propriety of [its] admission." Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010). The ultimate question is whether, based on the evidence viewed in the Commonwealth's favor, "any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness as defined by G. L. c. 123A, § 1." Souza, supra, quoting Commonwealth v. Blake, 454 Mass. 267, 271 (2009) (Ireland, J., concurring).

 Dr. Joss, the Commonwealth's expert, opined that the defendant met the diagnostic criteria for pedophilic disorder that are set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V). [Note 7] Such a diagnosis requires that an adult have "[o]ver a period of at 

 Page 83 

least [six] months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age [thirteen] or younger)." The defendant argues that there was insufficient proof that he met the DSM-V criteria: in particular, that there was a lack of proof that any children he was sexually attracted to were prepubescent, and that any such attraction recurred over at least a six-month period.

 As an initial matter, we note that in proving a mental abnormality or personality disorder, the Commonwealth need not satisfy the precise definitions set forth in the DSM, even where the Commonwealth's own expert expressly relied on those definitions. Compare Souza, 87 Mass. App. Ct. at 170, with id. at 176-177 (Milkey, J., dissenting). In any event, here the evidence was sufficient even if the Commonwealth were bound by the DSM-V definition. The Commonwealth presented evidence that in 2003, the defendant repeatedly raped his twelve year old son (Cole), and then, years later, raped a thirteen year old boy (Allen) and tried to groom (and to lure into his car) an eleven year old boy (Brent). Such evidence provided ample basis for a rational juror to conclude, beyond a reasonable doubt, that the defendant exhibited intense sexual urges toward prepubescent children that recurred over a period that lasted at least six months. To be sure, as the defendant points out, there was no evidence about the state of any of the victims' physical development to provide direct proof that they had not yet gone through puberty. However, where the children to whom a defendant is sexually attracted are thirteen years old or younger, evidence regarding the state of their physical development is unnecessary to establish pedophilia. See id. at 170-171. Thus, the Commonwealth's evidence was sufficient.

 2. Admission of the disputed documentary evidence regarding Cole. Although the defendant raises a number of evidentiary issues, he principally challenges the introduction of the police reports that detail allegations that he committed sexual offenses for which he was not convicted, especially those allegations made by Cole. Before turning to how existing case law treats

 Page 84 

 the admissibility of such material in the context of an SDP trial, we clarify the limited nature of what is in dispute.

 In the ordinary criminal law context, disputes over the introduction of evidence that a defendant has committed prior uncharged (or otherwise unproved) offenses typically turn on whether this amounts to improper "bad acts" evidence. Such disputes commonly turn on whether the probative value of such evidence outweighs its potential for undue prejudice, typically the risk that a jury improperly would take such evidence as showing the defendant's propensity to commit such crimes. Compare Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71-76 (2018), with id. at 76-81 (Singh, J., dissenting), and cases cited. In the context of an SDP trial, however, propensity is not forbidden territory; it is the very battlefield on which such cases are contested. The question is not whether the Commonwealth can rely on evidence of past sexual offenses that were never charged or proved, but on what specific evidence the Commonwealth may rely to prove that the defendant engaged in such offenses.

 Indisputably, the Commonwealth was seeking to have the jury consider the allegations set forth in the challenged documents for their truth: namely, that the defendant had committed the bad acts that Cole had alleged. The evidence therefore constituted hearsay. [Note 8] The Commonwealth has not argued, much less demonstrated, that any common-law exceptions to the hearsay rule apply. However, the Legislature has enacted a special set of statutory exceptions to the hearsay rule that apply in SDP proceedings. See G. L. c. 123A, § 14 (c). Those exceptions effect "'a very radical departure' from ordinary evidentiary rules." Andrews, petitioner, 368 Mass. 468, 473 (1975), quoting Commonwealth v. McGruder, 348 Mass. 712, 715 (1965), cert. denied, 383 U.S. 972 (1966). Still, if otherwise inadmissible hearsay does not fall within the scope of the statutory exceptions, it remains inadmissible. See Commonwealth v. Markvart, 437 Mass. 331, 335 (2002) ("hearsay not otherwise admissible under the rules of evidence is inadmissible at the trial of a sexually dangerous person petition unless specifically

 Page 85 

 made admissible by statute"). [Note 9]

 For present purposes, the key specific statutory exception is the one that allows the introduction of "police reports relating to such person's prior sexual offenses." G. L. c. 123A, § 14 (c). We turn now to the rich body of cases interpreting the scope of that exemption.

 In Markvart, 437 Mass. at 332, the court addressed whether the § 14 (c) exception applied to police reports detailing alleged sexual offenses with which the Commonwealth had charged the defendant and later nol prossed. The court held that such police reports did not qualify for admission under the statute. Id. at 336. It reasoned that "without a conviction or adjudication, the allegations in the nol prossed case materials are just that: allegations." Id. Police reports containing such allegations "do not constitute reports of 'prior sexual offenses[,]' [because] [t]o speak of a defendant's prior 'offenses' necessarily implies findings of guilt." Id.

 Two years after Markvart, the Supreme Judicial Court was called on to "decide whether a police report concerning a prior sexual offense to which the defendant has pleaded guilty is admissible without redaction, when the same report also contains statements about an uncharged contemporaneous sexual assault." Commonwealth v. Given, 441 Mass. 741, 741-742, cert. denied, 543 U.S. 948 (2004). The court concluded that so long as the police report related to a sexual offense for which the defendant had been convicted, "the Legislature did not intend to limit the scope of information admissible under § 14 (c) to the mere fact of conviction or even the facts presented at a plea colloquy; rather, other information in police reports -- including any statements describing the defendant's conduct and the circumstances attendant to the offense

 Page 86 

 -- is also admissible." Given, supra at 745. [Note 10] The court reasoned that "[t]he fact of conviction is a powerful independent indicator of the reliability of the statements" contained in the police report. Id. at 747-748. [Note 11]

 Although the Given decision limits the Markvart decision's import and lies in some tension with it, the Supreme Judicial Court has not overruled Markvart. Instead, the court in Given described itself as faithful to how the court previously "construed the term 'offenses' in Commonwealth v. Markvart." Given, 441 Mass. at 744. We therefore remain bound by the holding in Markvart that police reports do not qualify for admission pursuant to § 14 (c) unless they relate to a sexual offense for which the defendant has been convicted.

 That brings us to our decision in Starkus, the case on which the trial judge principally relied in concluding that the 2003 police reports were admissible. At issue in Starkus, 69 Mass. App. Ct. at 328, was the admissibility of a police report that detailed the defendant's rape of a fourteen year old girl. There, as here, the defendant was originally charged with rape but pleaded guilty only to simple assault and battery. Id. at 328-329. One question presented on appeal was whether the police reports that set forth the rape allegations properly had been admitted pursuant to § 14 (c), on the ground that they related to a "sexual offense" for which the defendant had been convicted. Id. at 332. We held that the police reports were admissible under the statute even though the rape charges had been dismissed as part of the plea agreement. Id. at 332-333. We reasoned that the defendant "was able to negotiate a very favorable plea bargain, but that does not negate the underlying and undisputed fact that the incident involved the rape of a fourteen year old girl." [Note 12] Id. at 332.

 Page 87 

 In a subsequent case, we clarified how the Starkus and Markvart decisions could be harmonized. See Commonwealth v. Torres, 87 Mass. App. Ct. 908, 909 (2015). In that case, we pointed out that the SDP statute defines "sexual offense" to include not only various enumerated offenses, but also a catch-all category of "any other offense, the facts of which, under the totality of the circumstances, manifest a sexual motivation or pattern of conduct or series of acts of sexually-motivated offenses." Id. at 909-910, quoting G. L. c. 123A, § 1 (definition of "sexual offense"). In Starkus, 69 Mass. App. Ct. at 332, even though the defendant had pleaded guilty only to simple assault and battery, the fact that the defendant had raped the victim was "undisputed"; indeed, the defendant there admitted to raping the victim, see id. at 331, 333. Thus, the totality of the circumstances in Starkus established the sexual nature of the assault and battery, and, accordingly, the assault and battery qualified as a "sexual offense" within the meaning of the SDP statute. We applied this reasoning in Torres, where we concluded that the defendant had been convicted of a sexual offense when he pleaded guilty to assault and battery by means of a dangerous weapon where the underlying "acts were indisputably sexual in nature and motivation." [Note 13] Torres, supra at 909.

 Given the similarities between Starkus and the case before us, the judge understandably accepted the Commonwealth's argument that Starkus was directly on point. However, there is one key difference between the cases. Unlike in Starkus or Torres, the defendant in this case disputed that the crime to which he pleaded guilty was sexual in nature. According to the record before us, in the face of the defendant's consistent denial of committing any sexual offenses against Cole, the Commonwealth agreed to permit the defendant to plead guilty to simple assault and battery, and not to pursue rape or other sexual assault charges. [Note 14] Because 

 Page 88 

the sexual nature of the assault and battery offenses to which the defendant pleaded guilty was never proved, admitted, or otherwise established, the Commonwealth cannot show that the 2003 police reports setting forth Cole's allegations related to a sexual offense within the meaning of the statute. [Note 15] Cf. Commonwealth v. Perez, 100 Mass. App. Ct. 7, 14 (2021), quoting G. L. c. 269, § 10G (where offense to which defendant pleaded guilty was not categorically "violent crime" within meaning of armed career criminal act, "a transcript of the plea hearing or a related document, such as a plea agreement, will be the best evidence of what the defendant was 'convicted of'"). Therefore, under Markvart, the police reports here did not qualify for admission pursuant to G. L. c. 123A, § 14 (c). Because the reports plainly otherwise constituted inadmissible hearsay, the judge erred in admitting them. [Note 16]

 As the Commonwealth concedes, the defendant preserved his claim that the 2003 police reports should not have been admitted. Accordingly, we can affirm the judgment only if we confidently can say that "the error did not influence the jury, or had but very slight effect" (citation omitted). Commonwealth v. George, 477 Mass. 331, 341 (2017). We cannot draw such a conclusion. While the defendant's rape convictions established his status as a sex offender, the Commonwealth still had to prove beyond a reasonable doubt that the defendant met all the statutory criteria of an SDP. Two of the three experts who testified, including one of the Commonwealth's QEs, opined that the defendant was not an SDP. Viewing the evidence as a whole, we cannot reasonably say that the jury's verdict was not affected by their learning of Cole's 

 Page 89 

detailed allegations that his father, the defendant, repeatedly had raped him when he was twelve years old. Contrast Starkus, 69 Mass. App. Ct. at 333 (where defendant admitted raping fourteen year old girl and other sexual misconduct, reversal of SDP judgment not required even if it was error to admit police report setting forth victim's allegations); Commonwealth v. Morales, 60 Mass. App. Ct. 728, 728-729, 732 (2004) (in appeal of SDP judgment based on trial counsel's failure to keep out certain evidence, reversal not required where "any reliance by [judge] on inadmissible evidence . . . was corroborative of the overwhelming and admissible evidence").

 3. Other issues. Although we need not reach the defendant's other claims of error to resolve the case before us, some merit discussion because they are likely to arise on retrial. The first involves whether the allegations regarding Brent needed to be redacted from the 2008 Clinton police report when that report was admitted pursuant to § 14 (c). Based on Given, we agree with the Commonwealth that no such redactions were necessary. The Clinton police report plainly was one related to prior sexual offenses for which the defendant was convicted (the rapes of Allen), and it therefore fell within the ambit of § 14 (c). The fact that it included some contemporaneous allegations for which the defendant was not charged, including with respect to an additional victim, does not require that redactions be made. [Note 17] See Given, 441 Mass. at 748.

 We also are unpersuaded by the defendant's argument that it was error to admit his unredacted probation records, which included records of charges for which he was not convicted. [Note 18] That issue is controlled by our decision in Commonwealth v. Mazzarino, 81 Mass. App. Ct. 358, 368-369 (2012), and the unredacted probation records were admissible.

 Page 90 

 In the case before us, the judge admitted not only the probation records, but also the actual indictments alleging the defendant's abuse of Cole. Whether the admission of such indictments was proper was not at issue in Mazzarino. However, because neither side has briefed this issue, we decline to resolve it here. [Note 19]

 One final issue remains. In determining whether the defendant was an SDP, Dr. Belle in part used the actuarial model known as the Static-99R test. In applying that model, Dr. Belle considered past sexual offenses for which the defendant was not convicted, such as those involving Cole. Unsurprisingly, when he called Dr. Belle at trial, defense counsel did not ask Dr. Belle about such allegations. On cross-examination, the prosecutor also did not ask Dr. Belle about the details of those allegations. Instead, he touched on the issue by eliciting that Dr. Belle had reviewed the police reports related to Cole's allegations and factored them into his assessment, including during the administration of the Static-99R model. At one point, Dr. Belle addressed the unproved nature of the allegations as follows: "So just because it didn't lead to a conviction doesn't mean that I discounted it, but certainly mindful that, that, you know, there could have been, there were allegations that didn't ultimately lead to a conviction."

 The defendant argues that the prosecutor's cross-examination of Dr. Belle improperly "highlight[ed]" the unproved allegations that Cole had made. In response, the Commonwealth not only argues that there was no error, but also suggests -- based on language in Markvart -- that because it was cross-examining the defendant's witness, it had free rein to inquire about the substance of Cole's allegations. See Markvart, 437 Mass. at 338 (stating that details of basis for QE's report "may be elicited during cross-examination, but the decision whether to [elicit those details] is a strategic one left to the opposing party" [citation omitted]). The defendant counters that the quoted language from Markvart was not intended to apply to cross-examination of the defendant's experts, particularly where the expert was one of the QEs that the Commonwealth had engaged to examine him. As the defendant sees it, the Commonwealth's reading of Markvart "force[s] respondents" to make an unfair choice between "either not calling a [QE] who determines he is not sexually dangerous to testify . . . or calling the [QE] to testify and being forced to watch the Commonwealth 

 Page 91 

elicit information that the Commonwealth would never be allowed to elicit during direct examination of its own [QE] witness."

 For present purposes, it suffices to say that the prosecutor's questioning of Dr. Belle regarding the basis of his opinion was sufficiently limited as not to run afoul of the boundaries drawn in the cases. We decline the Commonwealth's invitation to opine on whether the prosecutor could have delved deeper into Cole's allegations when he cross-examined Dr. Belle, and we leave resolution of the disputed language in Markvart to another day.

 Conclusion. We conclude that the evidence was sufficient to support the defendant's adjudication as an SDP. Nevertheless, for the reasons detailed above, we vacate the judgment and set aside the verdict, and remand this case to the Superior Court.

So ordered.

FOOTNOTES
[Note 1] Appended to one of the police reports were various documents, including an affidavit submitted in support of a search warrant. The parties have treated this material as part of the police reports and, for present purposes, we do as well. 

[Note 2] In fact, assault and battery is not a lesser-included offense of indecent assault and battery on a person under the age of fourteen, because each crime requires proof of at least one element that the other does not. See Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 141 n.8 (2018), citing Commonwealth v. Farrell, 31 Mass. App. Ct. 267, 268-269 (1991) ("simple assault and battery is not a lesser included offense of indecent assault and battery on a child, because lack of consent is not an element of the latter charge"). 

[Note 3] The defendant was not charged with showing pornography to Allen. 

[Note 4] The first other witness was a former coworker of the defendant, who testified to his having seen the defendant with young boys, including on one occasion during a period when a probation condition had required the defendant to stay away from anyone under the age of sixteen. The second was the defendant's sister, whom the Commonwealth appears to have called to suggest that the defendant did not have an adequate release plan in place. 

[Note 5] For example, the judge told the jury venire that 

"The abuse progressed and the [defendant] would fondle [Cole's] penis and have [Cole] rub his penis about twice a week. The [defendant] would have [Cole] touch him to the point of ejaculation. Just before the [defendant] ejaculated the [defendant] would have [Cole] put a sock on the end of the [defendant's] penis.

"When they moved to Shirley the touching again progressed. The [defendant] made [Cole] perform oral sex on him and the [defendant] would perform oral sex on [Cole]."

[Note 6] On the second day of trial, the material was marked only for identification. The following morning, the judge at sidebar sua sponte suggested that the documents be marked as exhibits, something the judge characterized as a mere "housekeeping issue." This prompted the prosecutor, once back on the record, to move that the documentary evidence formally be admitted. At that point, defense counsel stated that he had no objection to the admission. The Commonwealth, rightly, does not argue that this amounted to a waiver of the defendant's well-preserved prior objections. In context, defense counsel's statement was a mere acquiescence to the judge's taking a ministerial act to implement her earlier rulings allowing the material in evidence. 

[Note 7] In his testimony, Dr. Joss did not specify which version of the DSM he was relying on, but in his written report, which was admitted in evidence, he indicated that he was relying on the fifth edition. The definition of "pedophilic disorder" in the DSM-V is, in pertinent part, identical to the definition of "pedophilia" in the previous edition of the DSM. See Starkus, 69 Mass. App. Ct. at 336, quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). 

[Note 8] In fact, the admitted documentary material includes multiple levels of hearsay. For example, the affidavit of a Shirley police officer recounted what he had "learned" from speaking to a supervisor at the Department of Social Services (now known as the Department of Children and Families) with respect to allegations that Cole had made to the agency. 

[Note 9] Of course, the terms of the statute potentially are limited by constitutional considerations. To date, such issues have received little attention in the cases. For example, in Markvart, 437 Mass. at 333, 339, the court declined to respond to a question the trial court had reported regarding the constitutionality of admitting police reports detailing allegations that never led to a conviction. Instead, the court summarily concluded that the "requirements and limitations [adopted in Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986),] suffice to address due process concerns and the right of confrontation." Id. at 339. The defendant before us has referenced the constitutional issues in passing, but he does not press them. To the contrary, even though the SDP statute serves to confine people involuntarily in anticipation of their conducting future crimes, the defendant takes the position that the confrontation clause does not apply to SDP commitment proceedings because they are civil. 

[Note 10] Given was a four-to-three decision. The dissenting justices agreed with this court that under the reasoning of Markvart, the portion of the police report setting forth the allegations of uncharged conduct needed to be redacted. See Given, 441 Mass. at 749-753 (Ireland, J., dissenting). See also Commonwealth v. Given, 59 Mass. App. Ct. 390, 394 (2003). 

[Note 11] One year after Given, the Supreme Judicial Court issued an opinion interpreting the statutory exception provided in G. L. c. 123A, § 14 (c), for "psychiatric and psychological records" as allowing in evidence a significant amount of hearsay relating to sexual offenses for which a defendant had not been convicted. See McHoul, petitioner, 445 Mass. 143, 147-153 (2005), cert. denied, 547 U.S. 1114 (2006). McHoul is not directly applicable to the case before us. 

[Note 12] As an alternative holding, we ruled that even if it was error to admit the police report, the defendant had not proved sufficient prejudice to warrant reversal in light of the fact that he admitted raping the fourteen year old girl. See Starkus, 69 Mass. App. Ct. at 333. 

[Note 13] In Torres, 87 Mass. App. Ct. at 909, the defendant had been charged with assault and battery by means of a dangerous weapon and indecent assault and battery. The charges were based on allegations that the defendant fondled a sixteen year old victim while holding a knife to her abdomen. Id. The defendant pleaded guilty to assault and battery by means of a dangerous weapon, and the indecent assault and battery charge was dismissed. Id. 

[Note 14] We recognize that in Markvart, 437 Mass. at 331-332, the charges were nol prossed, while here they were placed on file. Either way, the sexual offense charges were not pursued and, as a result, the unproved allegations underlying those charges remained "just that: allegations." Id. at 336. 

[Note 15] There is little danger that today's holding will require the Commonwealth to call the victims of a defendant's past sexual offenses in lieu of its offering the relevant police reports. That is because, even where the Commonwealth chooses to allow a defendant charged with a sexual offense to plead guilty to an offense -- such as assault and battery -- that may or may not qualify as a sexual offense, the Commonwealth has it within its power to see that the sexual nature of the offense is established in the plea colloquy; it could then offer that plea colloquy at the SDP trial. Even in the case before us, it may be that the transcript of the 2006 plea colloquy actually established the sexual nature of the assault and battery offenses to which the defendant pleaded guilty. 

[Note 16] For similar reasons, Cole's allegations should have been redacted from Dr. Joss's QE report before it was admitted, even though QE reports are admissible pursuant to § 14 (c). See Markvart, 437 Mass. at 338-339 (where police report does not relate to sexual offense for which defendant was convicted, hearsay taken from that report must be redacted from QE report). Nor should the judge have repeated Cole's allegations in her summary of the case to the jury venire, much less done so as unqualified statements of fact. 

[Note 17] The defendant suggests that for unproved allegations included in a police report to qualify for admission pursuant to § 14 (c), Given requires that there be a factual nexus between those allegations and the ones for which the defendant was convicted. Even if Given is read that way, there was a sufficient nexus here. The police report concerned the defendant's alleged sexual abuse of two young boys in the same time period using the same modus operandi. As noted, the boys also were connected to each other, as there was evidence that the boys knew each other, and the defendant sometimes met them together. Cf. Commonwealth v. Mamay, 407 Mass. 412, 416-418 (1990). 

[Note 18] The probation records referenced not only the charges the defendant faced with respect to Cole, but also charges he faced in 2001 regarding a fourth victim. A jury acquitted him of those charges. 

[Note 19] The extent to which the separate admission of the indictments is of consequence is not immediately clear where the probation records themselves reference the charges. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.