SUPREME JUDICIAL COURT 
 
 GEORGE MACKIE vs. KATRIN ROUSE-WEIR / GEORGE MACKIE vs. ROBERT JOSS

 
 Docket:
 SJC-13554 / SJC-13558
 
 
 Dates:
 September 6, 2024 - January 24, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Judicial Immunity. Privileged Communication. Witness, Expert. Evidence, Privileged communication, Expert opinion, Sex offender. Sex Offender. Practice, Civil, Sex offender, Civil commitment, Motion to dismiss.
 
 

       Civil action commenced in the Superior
Court Department on February 12, 2021.
      A motion to dismiss was heard by Valerie
A. Yarashus, J.
      After review by the Appeals Court, 103
Mass. App. Ct. 1102 (2023), the Supreme Judicial Court granted leave to obtain
further appellate review.
      Civil action commenced in the Superior
Court Department on February 12, 2021.
      A motion to dismiss was heard by Sharon E.
Donatelle, J.
      After review by the Appeals Court, 103
Mass. App. Ct. 1102 (2023), the Supreme Judicial Court granted leave to obtain
further appellate review.
      George Mackie, pro se.
      Kenneth B. Walton (Patricia B. Gary also
present) for the defendants.
      Mary P. Murray for Department of
Correction.
      GEORGES, J.  Where the Commonwealth contends that a
prisoner who was previously convicted of a qualifying sexual offense is a
"sexually dangerous person" (SDP) as defined in G. L.
c. 123A, § 1,[1] it may file a petition seeking to civilly commit the
person following his or her release from custody.  See G. L. c. 123A,
§ 12 (a)-(b).  The provisions
of the SDP statute, G. L. c. 123A (c. 123A), as well as our
decisional law, require the use of at least two types of expert witnesses
during this process:  probable cause
experts, whose opinions are required to begin the process; and qualified
examiners, whose opinions dictate whether the case may proceed to trial.  This case addresses whether these experts are
immune from liability for the opinions they provide during the process.  
      The plaintiff, George Mackie, was
vindicated on appeal from a jury verdict adjudicating him an SDP.  He later commenced separate civil actions
against Dr. Katrin Rouse-Weir, a probable cause expert hired by the office of
the district attorney for the middle district (district attorney's office),
which petitioned for Mackie's commitment; and Dr. Robert Joss, a qualified
examiner whose services were paid for by the Department of Correction
(DOC).  In his complaints, Mackie alleged
that Rouse-Weir and Joss submitted inaccurate reports to the court and falsely
represented that Mackie met the criteria to be committed as an SDP.[2]  
      Rouse-Weir and Joss each filed a motion to
dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754
(1974), contending entitlement to qualified immunity for the acts complained of
by Mackie.  Separate Superior Court
judges allowed the motions and entered judgments for the defendants, with both
judges concluding that the defendants were entitled to absolute quasi judicial
immunity, rather than addressing the initial basis of the experts' motions –‑
that is, qualified immunity.  Mackie
appealed from these judgments to the Appeals Court.  In separate unpublished decisions, the same
Appeals Court panel reversed both dismissal orders, ruling that Joss and
Rouse-Weir were entitled only to qualified immunity and not to absolute quasi
judicial immunity.  See Mackie v. Joss,
103 Mass. App. Ct. 1102 (2023); Mackie v. Rouse-Weir, 103 Mass. App. Ct. 1102
(2023).  
      We granted the defendants' applications
for further appellate review and paired the appeals for argument.  For the reasons that follow, we conclude that
absolute quasi judicial immunity protects qualified examiners from liability,
and they are further protected by the litigation privilege.  We also conclude that probable cause experts
are immune from liability by the litigation privilege.  Accordingly, because Mackie brought his
claims against Joss and Rouse-Weir based on conduct taken solely in their
expert capacities, we affirm the Superior Court judgments dismissing his
complaints.[3]
      Background.  To contextualize our discussion, we first
provide a brief overview of SDP commitment proceedings, focusing on the roles
of probable cause experts and qualified examiners.  We then summarize the relevant facts from the
complaints, reserving certain details for later discussion.  
      1. 
Chapter 123A proceedings.  After
an SDP petition is filed, a Superior Court judge holds a hearing to determine
whether there is "probable cause" to believe the subject of the
petition is sexually dangerous. 
G. L. c. 123A, § 12 (c).  In Commonwealth v. Bruno, 432 Mass. 489, 511,
513 (2000), we held that expert testimony is required at this stage, reasoning
that the question "[w]hether a person suffers from a mental abnormality or
personality defect, as well as the predictive behavioral question of the
likelihood that a person suffering from such a condition will commit a sexual
offense, are matters beyond the range of ordinary experience and require expert
testimony."
      If, in light of the expert's testimony,
the judge determines that there is probable cause to believe the person is
sexually dangerous, that person "shall be committed to the [Massachusetts
Treatment Center] for a period not exceeding [sixty] days for the purpose of
examination and diagnosis under the supervision of two qualified
examiners."  G. L.
c. 123A, § 13 (a).  See
Chapman, petitioner, 482 Mass. 293, 300 (2019).  As defined in § 1 of the SDP statute, a
qualified examiner is "designated by the commissioner of correction,"
but "need not be an employee of the [DOC] or of any facility or
institution of the [DOC]."  
      Qualified examiners serve a unique
gatekeeper function.  Johnstone,
petitioner, 453 Mass. 544, 552 (2009). 
Specifically, if neither examiner finds the person sexually dangerous,
"'the Commonwealth cannot rely upon other sources of potential expert
evidence . . . to meet its burden of proof at trial,' and the
[person] must therefore be discharged before trial."  Chapman, 482 Mass. at 303, quoting Johnstone,
supra at 553.  However, if one or both
examiners find the person is sexually dangerous, the Commonwealth may petition
the court for a trial within fourteen days from the time that the qualified
examiners submit their reports to the court. 
G. L. c. 123A, § 14 (a).  At trial, a person may be civilly committed
only if the jury find "unanimously and beyond a reasonable doubt that the
person named in the petition is a sexually dangerous person."  G. L. c. 123A,
§ 14 (d).  
      2. 
Underlying SDP commitment proceedings. 
The district attorney's office hired Rouse-Weir as its probable cause
expert to evaluate Mackie and determine whether he met the criteria for an
SDP.  After evaluating Mackie, Rouse-Weir
prepared a report opining that Mackie met the criteria of an SDP.  Armed with this preliminary determination,
the district attorney's office filed in the Superior Court a petition pursuant
to G. L. c. 123A, § 12, seeking to civilly commit Mackie.  At his own request, Mackie was subsequently
evaluated by another expert,[4] who determined that Mackie did not meet the
criteria for sexual dangerousness. 
Mackie then met with Rouse-Weir to point out factual inconsistencies in
her report and to contest her conclusion that he met the criteria of an
SDP.  Following this second interview,
Rouse-Weir updated her report, reaffirming her conclusion that Mackie was an
SDP.[5]  A Superior Court judge found
probable cause that Mackie was sexually dangerous and ordered him detained at
the Massachusetts Treatment Center pending trial.
      Following the probable cause
determination, Mackie was interviewed by Joss, one of the qualified examiners
hired to evaluate Mackie as statutorily required.  Joss submitted his report to the court, in
which he concluded that Mackie met the diagnostic criteria for pedophilic
disorder and opined that he was an SDP.  
      At a jury trial held in the Superior
Court, Joss testified.  Joss reiterated
his diagnosis of Mackie's pedophilic disorder, as well as his related opinion
that Mackie met the criteria for sexual dangerousness.  Ultimately, the jury found unanimously and
beyond a reasonable doubt that Mackie was an SDP, and he was civilly committed
for an indefinite period.  
      Mackie then appealed, challenging the
Commonwealth's reliance on evidence alleging prior sexual offenses for which he
was never convicted.  See Commonwealth v.
Mackie, 100 Mass. App. Ct. 78, 79 (2021). 
While acknowledging that there was sufficient evidence "to support
the defendant's adjudication as an SDP," the Appeals Court agreed with
Mackie that the admission of that evidence was prejudicial error.  The Appeals Court vacated the judgment and
set aside the verdict, remanding the case to the Superior Court.  Id. at 88, 91.  
      3. 
Procedural history.  a.  Rouse-Weir. 
Mackie commenced a civil action in the Superior Court against
Rouse-Weir.  Relevant to this appeal,
Mackie alleged that Rouse-Weir "fil[ed] . . . a false report
with the [Superior] Court and ma[de] false statements under oath, which denied
[Mackie] his liberty."  Rouse-Weir
filed a motion to dismiss, arguing that she was entitled to qualified immunity
as a government-hired probable cause expert performing "a discretionary task."  Mackie opposed the motion, contending that
Rouse-Weir, as a private party, was not entitled to qualified immunity. 
      At the hearing on the motion to dismiss,
counsel for Rouse-Weir did not rely on the qualified immunity argument raised
in her written motion.  Rather,
Rouse-Weir's counsel shifted arguments, asserting orally that she was instead
entitled to absolute quasi judicial immunity based on Massachusetts case
law.  However, Mackie continued to focus
his arguments solely on disputing Rouse-Weir's claim to qualified
immunity.  
      The motion judge dismissed the case
against Rouse-Weir on the ground that she was protected by absolute quasi
judicial immunity.  The judge reasoned
that Rouse-Weir "performed the essential function of evaluating [Mackie's]
record and rendering an expert opinion as to whether or not he met the criteria
of an SDP . . . .  In
other words, [she] functioned as an 'arm of the court.'"  Mackie timely appealed from the decision.
      Before the Appeals Court, Mackie argued
that Rouse-Weir had waived her right to claim quasi judicial immunity by not
asserting it in her written motion to dismiss. 
He also disputed Rouse-Weir's entitlement to both quasi judicial and
qualified immunity.[6]  In response,
Rouse-Weir claimed that she had not waived her absolute quasi judicial immunity
argument where it was raised orally during the motion hearing.  She further maintained that quasi judicial
immunity applied because she was performing "an essential judicial
function."  As a result, Ross-Weir
argued, the Appeals Court did not need to consider qualified immunity since
quasi judicial immunity already provided her with absolute protection from
Mackie's claims.
      At oral argument, Rouse-Weir's counsel
emphasized, in maintaining that Rouse-Weir was entitled to quasi judicial
immunity, that her role as a probable cause expert was "closely associated
with the judicial process."[7]  When
asked about qualified immunity, counsel confirmed that it was not being pursued
as a defense.  Similarly, when pressed
whether the litigation privilege applied to Rouse-Weir, her counsel responded
that while she believed that quasi judicial immunity sufficed to resolve the
case, the court could affirm on other grounds apparent in the record.[8] 
      In an unpublished decision, the Appeals
Court ultimately affirmed in part and reversed in part the lower court's
judgment.  Unlike the motion judge, who
focused on quasi judicial immunity, the Appeals Court analyzed Rouse-Weir's
claim under the framework of absolute prosecutorial immunity.  The Appeals Court concluded that Ross-Weir
was not entitled to this theory of immunity because her role as a probable
cause expert was more akin to "an investigator and a witness, at most no
more than a complaining witness." 
In support, the Appeals Court cited Kalina v. Fletcher, 522 U.S. 118,
129 (1997), in which the United States Supreme Court held that absolute
prosecutorial immunity does not apply when prosecutors act outside their
prosecutorial duties and instead act as witnesses.[9]  The Appeals Court also determined that
Rouse-Weir was entitled to qualified immunity for some, but not all, of
Mackie's claims, referencing Filarsky v. Delia, 566 U.S. 377, 393-394 (2012).[10]  
      b. 
Joss.  Mackie commenced a separate
lawsuit against Joss, raising similar claims to those he alleged against
Rouse-Weir.[11]  Specifically, Mackie
alleged that Joss falsely reported and testified that he met the diagnostic
criteria for pedophilic disorder and was sexually dangerous.  Joss responded with a motion to dismiss, asserting
qualified immunity as the ground for dismissal, which Mackie opposed.  
      Like Rouse-Weir, Joss did not mention
quasi judicial immunity in his written motion but raised the argument and cited
supporting case law orally during the motion hearing.  A different Superior Court judge granted
Joss's motion, concluding that qualified examiners are entitled to absolute
quasi judicial immunity.  The judge
reasoned that qualified examiners perform essential judicial functions and,
under c. 123A, serve as "independent" experts who function
"as though appointed by the court." 
Chapman, 482 Mass. at 303. 
Additionally, unprompted the judge noted in a footnote that Joss's
statements appeared to be "protected by the litigation
privilege."  Mackie subsequently
appealed.  
      On appeal, Mackie similarly argued that
Joss had waived any claim to absolute quasi judicial immunity by failing to
raise it in his written motion to dismiss. 
Mackie also contended that Joss was entitled to neither quasi judicial
immunity nor qualified immunity.  In
response, Joss's counsel argued that he had not waived quasi judicial immunity
because the motion judge understood during the motion hearing that Joss was
seeking absolute immunity rather than qualified immunity, such that the judge did
not raise the issue "sua sponte." 
Joss's counsel further maintained that, as a qualified examiner, Joss
performed "an essential judicial function" and was therefore entitled
to quasi judicial immunity. 
Additionally, although the issue had only been raised by the motion
judge, Joss's counsel claimed he was protected by the litigation privilege as a
witness in a judicial proceeding. 
      In a separate decision, the same Appeals
Court panel that decided Rouse-Weir's case likewise vacated the order of dismissal
in Joss's case and remanded it for further proceedings.[12]  The panel concluded that Joss, like
Rouse-Weir, was entitled only to qualified immunity and not to absolute
prosecutorial immunity.  The Appeals
Court explained that, while qualified examiners are hired by the prosecuting
party, they do not qualify for absolute prosecutorial immunity because their
statutory role "makes them at most analogous to a complaining
witness" in a criminal case.  See
Kalina, 522 U.S. at 129.  The panel also
determined that Joss was not entitled to absolute quasi judicial immunity, the
issue addressed by the parties on appeal, reasoning that qualified examiners
"are not appointed by an arm of the court," but are instead hired by
"one of the parties before the court."  
      Discussion.  1. 
Standard of review.  We review the
allowance of a motion to dismiss de novo. 
See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).  In conducting our review, we accept as true
all the facts alleged in the complaint and draw all reasonable inferences in
the plaintiff's favor.  See Flagg v.
AliMed, Inc., 466 Mass. 23, 26 (2013). 
"To survive a motion to dismiss for failure to state a claim, the
claimant must plausibly allege an entitlement to relief above the speculative
level."  Hornibrook v. Richard, 488
Mass. 74, 78 (2021), citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 636
(2008).  
      While the procedural history of both cases
raises several theories of immunity, we focus on two:  (1) absolute quasi judicial immunity; and (2)
the litigation privilege.  We begin with
a discussion of the principles governing each. 

      2. 
Quasi judicial immunity.  Judicial
immunity is a well-settled principle in our common law.  See Allard v. Estes, 292 Mass. 187, 189–190 (1935).  Judges are entitled to judicial immunity,
meaning they are "exempt from liability to an action for any judgment or
decision rendered in the exercise of jurisdiction vested in [them] by
law."  LaLonde v. Eissner, 405 Mass.
207, 210 (1989), quoting Allard, supra. 
Notwithstanding its name, this immunity is not limited to judges.  See Comins v. Sharkansky, 38 Mass. App. Ct.
37, 39 (1995).  Rather, judicial immunity
has been extended to persons who perform quasi judicial functions.  See Hornibrook, 488 Mass. at 80 (court-appointed
conservator); LaLonde, supra at 210-211, 212 (court-appointed psychiatrist);
Temple v. Marlborough Div. of the Dist. Court Dep't, 395 Mass. 117, 133 (1985)
(court clerks); Sarkisian v. Benjamin, 62 Mass. App. Ct. 741, 745 (2005)
(guardian ad litem).  
      To determine whether a person performs a
quasi judicial function warranting absolute immunity, we apply a functional
analysis.  LaLonde, 405 Mass. at
212.  This approach evaluates the
"nature of the duties performed, and whether they are 'closely associated
with the judicial process.'"  Cok v.
Cosentino, 876 F.2d 1, 3 (1st Cir. 1989), quoting Cleavinger v. Saxner, 474
U.S. 193, 200 (1985).  See LaLonde, supra
(defendant entitled to quasi judicial immunity where he rendered expert opinion
to judge).  Quasi judicial immunity is
granted to persons whose roles are "an integral part of the judicial
process," because these persons "must be able to act freely without
the threat of a law suit."  Id. at
211.  In other words, those
"appointed to perform essential judicial functions are entitled to
absolute immunity."  Id. at
213.  However, this immunity does not
apply "when such persons perform acts which are clearly outside the
scope" of their role in the adversarial process.  Cok, supra. 

      3. 
Litigation privilege.  In
Bassichis v. Flores, 490 Mass. 143, 149-152 (2022), this court examined the
scope of the litigation privilege, which broadly protects attorneys and
witnesses from "civil liability generally" for their statements
during judicial proceedings (citation omitted). 
Specifically, the privilege ensures that statements made by witnesses
during judicial proceedings, as long as they are relevant to the case, are
"absolutely privileged, even if uttered maliciously or in bad
faith."  Aborn v. Lipson, 357 Mass.
71, 72 (1970), quoting Mezullo v. Maletz, 331 Mass. 233, 236 (1954).  See Bassichis, supra at 150, 154; Correllas
v. Viveiros, 410 Mass. 314, 319 (1991).
      Furthermore, the litigation privilege
"extends beyond statements that are made in the court room itself to
'communications preliminary to a proposed judicial proceeding.'"  Bassichis, 490 Mass. at 150, quoting Sriberg
v. Raymond, 370 Mass. 105, 108 (1976) (adopting construction of privilege as
laid out in Restatement [Second] of Torts). 
The purpose of the litigation privilege is twofold:  to encourage "zealous advocacy" by
attorneys and to promote "full disclosure" by witnesses, without the
fear of civil liability.  Bassichis,
supra at 151-152. 
      4. 
Analysis.  a.  Joss. 
Mackie argues that Joss is not entitled to absolute quasi judicial
immunity because, as a qualified examiner, Joss was not appointed, hired, or
paid by the court, but rather "hired by the [DOC]."[13]  We disagree with this argument because it
disregards established precedent consistently noting that "[a]lthough
appointed by the Commissioner of Correction, . . . an expert who
serves as a qualified examiner is recognized to be independent and to serve as
though appointed by the court." 
Chapman, 482 Mass. at 303.  See
Commonwealth v. Felt, 466 Mass. 316, 322 & n.9 (2013); Gangi v.
Commonwealth, 462 Mass. 158, 162 (2012); Johnstone, 453 Mass. at 551;
Commonwealth v. Sargent, 449 Mass. 576, 580 (2007); Commonwealth v. Connors,
447 Mass. 313, 314 n.2 (2006).  
      The "functional analysis" central
to determining the scope of quasi judicial immunity examines the nature of the
person's duties and his or her relationship to the judicial process, rather
than who hires (or pays) him or her.  For
example, in LaLonde, 405 Mass. at 212 & n.9, we held that a psychiatrist
appointed by the Probate Court to evaluate a family and report findings to the
court was entitled to quasi judicial immunity, even though a member of the
family was ordered by the court to pay for the expert's services.  
      With that aperture in mind, applying a
"functional analysis" here we conclude that qualified examiners
perform an "essential judicial function[]."  LaLonde, 405 Mass. at 212-213.  First, qualified examiners are essential to
SDP commitment proceedings, as recognized in Johnstone, 453 Mass. at 551-552,
where we highlighted their indispensable role. 
See id. (qualified examiners are "integral to nearly every step of
the civil commitment process"). 
Detailing the critical role played by qualified examiners under c. 123A,
we explained: 
"The
statutory scheme . . . expressly sets the qualified examiners apart
from other sources of expert evidence. 
Indeed, the role of the qualified examiners within that scheme persuades
us that the Legislature intended them to serve in a capacity similar to that of
a gatekeeper, deciding whether a person warrants commitment as a sexually
dangerous person.  Implicit in this view
is the conclusion that, if both qualified examiners determine that a person is
not sexually dangerous, the Commonwealth cannot meet its burden of
proof."  
Id. at 552.  In this respect, qualified examiners serve a
purpose beyond that of a regular expert witness.  Their testimony is "the essential basis
for a finding of sexual dangerousness." 
Green, petitioner, 475 Mass. 624, 630 (2016).   
      Second, both legal precedent and the
statutory framework of c. 123A establish that the role of qualified examiners
is not only essential, but quasi judicial. 
Although appointed through the DOC, qualified examiners act as independent
experts functioning as an arm of the court, not beholden to any party.  See Chapman, 482 Mass. at 303.  Moreover, much like how a judge may, in
certain circumstances, act as a gatekeeper, qualified examiners'
"gatekeeper" role underscores their quasi judicial functions.  See id. at 307-308; Green, 475 Mass. at 630;
Johnstone, 453 Mass. at 551-552; LaLonde, 405 Mass. at 212-213.  Because qualified examiners play such an independent
(and essential) role in SDP commitment proceedings, the question of their
immunity raises the same practical and policy concerns identified in Lalonde,
supra at 211-212.  That is, without quasi
judicial immunity, "human nature indicates that [qualified examiners],
faced with the threat of personal liability, will be less likely to offer the
disinterested objective opinion that the court seeks."  Id. at 212. 

      Given these considerations, qualified
examiners discharging their duties pursuant to c. 123A are entitled to absolute
quasi judicial immunity.[14]  Because
Mackie's complaint pertains solely to Joss's conduct as a qualified examiner,
he is entitled to absolute quasi judicial immunity.
      b. 
Rouse-Weir.  Mackie argues that
Rouse-Weir is not entitled to absolute quasi judicial immunity because, as a
probable cause expert, she was not acting on behalf of the judiciary.[15]  As a source of friction with Mackie's
argument, probable cause experts play an essential role in SDP commitment
proceedings, analogous to the integral "gatekeeper" function
performed by qualified examiners.  See
Chapman, 482 Mass. at 303; Bruno, 432 Mass. at 511, 513.  The nature of their role alone, however, does
not determine what type of immunity, if any, to which probable cause experts
are entitled.  As discussed, whether
these experts qualify for quasi judicial immunity requires a functional
analysis.  While there is some overlap
between their responsibilities and those of qualified examiners, the quasi
judicial immunity granted to qualified examiners does not automatically apply
to probable cause experts.  This is due
to significant differences in their roles within c. 123A proceedings.  
      At the probable cause stage, the
Commonwealth can consult as many experts as necessary until it finds one
willing to testify that the person is sexually dangerous.  See Chapman, 482 Mass. at 304 ("a
finding of probable cause . . . can rest on the opinion of any expert
[the Commonwealth] retained to testify that the individual is sexually
dangerous").  Indeed, a probable
cause expert's testimony must "establish probable cause" regarding
sexual dangerousness for the Commonwealth to seek to have the person committed
as an SDP.  Bruno, 432 Mass. at 511,
513.  In contrast, qualified examiners operate
independently, see Chapman, 482 Mass. at 303; they do not need to agree with
the Commonwealth on the question of sexual dangerousness, and may even disagree
with each other.[16]  These differences
are significant in determining the scope of potential immunity.  
      Notwithstanding, we need not decide
whether probable cause experts are entitled to absolute quasi judicial immunity
because they are independently protected by the litigation privilege.  On this point, we are persuaded by the
Appeals Court's articulation of when the litigation privilege applies -- that
is, a court must analyze the facts on "a case-by-case basis" to
determine "whether a proceeding is sufficiently judicial or quasi judicial
in nature" (citation omitted). 
Patriot Group, LLC v. Edmands, 96 Mass. App. Ct. 478, 484-485
(2019).  Probable cause hearings are a
"formal adversary proceeding." 
Bruno, 432 Mass. at 512-513.  See
G. L. c. 123A, § 12 (c), (d).  The respondent has the right to counsel, the
right to present evidence, and the right to cross-examine.  G. L. c. 123A,
§ 12 (d) (1)-(3).  See
Bruno, supra.  Because "a proceeding
that include[s] the right to counsel, the right to present evidence, the right
to cross-examine adverse witnesses, and the threat of perjury, constitute[s] a
quasi judicial proceeding" (quotations and citation omitted), Patriot Group,
LLC, supra at 485, the litigation privilege applies to probable cause hearings
conducted pursuant to G. L. c. 123A, § 12.  
      The litigation privilege protects experts
who testify at probable cause hearings, allowing them "to testify without
fear of civil liability." 
Bassichis, 490 Mass. at 152.  This
privilege also extends to "communications preliminary to litigation,"
Sriberg, 370 Mass. at 109, including reports prepared by probable cause experts
in anticipation of a hearing. 
Importantly, the privilege applies even if the expert's statements were
made "maliciously or in bad faith." 
Mezullo, 331 Mass. at 236.  See
Bassichis, supra at 150.[17]  
      In this case, Rouse-Weir was engaged by
the district attorney's office to evaluate whether Mackie met the criteria of
an SDP.  Her opinion was necessary to
initiate the SDP commitment proceedings. 
See Bruno, 432 Mass. at 511, 513 (requiring use of experts at SDP
probable cause hearings).  After meeting
with Mackie twice, Rouse-Weir prepared evaluation reports in which she
concluded –- and later reaffirmed -- that Mackie was an SDP.  Based on her opinion, the court found
probable cause that Mackie was an SDP and detained him pending trial.  
      The conduct Mackie challenges, including
Rouse-Weir's allegedly false testimony and her submission of an allegedly
inaccurate report, arises solely from her communications preliminary to or
during the probable cause hearing.  As
such, the litigation privilege shields Rouse-Weir from liability.[18]
Judgments
affirmed.
 
footnotes
 
[1] General Laws
c. 123A, § 1, states, in relevant part, that a "sexually
dangerous person" is      
"any person
who has been (i) convicted of or adjudicated as a delinquent juvenile or
youthful offender by reason of a sexual offense and who suffers from a mental
abnormality or personality disorder which makes the person likely to engage in
sexual offenses if not confined to a secure facility; (ii) charged with a
sexual offense and was determined to be incompetent to stand trial and who
suffers from a mental abnormality or personality disorder which makes such
person likely to engage in sexual offenses if not confined to a secure
facility; or (iii) previously adjudicated as such . . . and whose
misconduct in sexual matters indicates a general lack of power to control his
sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by
either violence against any victim, or aggression against any victim under the
age of 16 years, and who, as a result, is likely to attack or otherwise inflict
injury on such victims because of his uncontrolled or uncontrollable
desires."  
 
[2] Against both
defendants, Mackie also alleged "medical malpractice" and violations
of both G. L. c. 12, § 11I, and his right to liberty as secured
by art. 10 of the Massachusetts Declaration of Rights.  He further accused Rouse-Weir of perjury and
claimed that Joss failed to comply with the statutory criteria detailed in
G. L. c. 123A, § 1.
 
[3] We
acknowledge the amicus brief submitted by the DOC.
 
[4] "[T]he
person named in the petition may retain experts or professional persons to
perform an examination on his behalf." 
G. L. c. 123A, § 14 (b).  See Bruno, 432 Mass. at 495-496.  
 
[5] The updated
report had twenty-seven paragraphs missing from the initial report.
 
[6] At oral
argument, Mackie reiterated his claim that Rouse-Weir is not a State actor,
emphasizing that she was not hired by the court.  
 
[7] At oral
argument before the Appeals Court for Joss's case, appellee counsel stated
that, for both cases, they "will argue" for "either or"
with respect to quasi judicial immunity and qualified immunity.  
 
[8] When the
court asked for further clarification as to when counsel for the appellees
briefed the litigation privilege issue, counsel stated that the litigation
privilege was briefed in "one of the cases."  The record reflects that the litigation
privilege was raised in Joss's brief to the Appeals Court but was not mentioned
in Rouse-Weir's brief.  
 
[9] Below,
Rouse-Weir did not expressly claim absolute prosecutorial immunity in her
written motion to dismiss or orally at the motion hearing.  Rather, the motion judge discussed, but did
not rely on, prosecutorial immunity in her decision granting the motion to
dismiss.  
 
[10] In Filarsky,
566 U.S. at 393-394, the Court extended qualified immunity to a private
attorney temporarily retained by a city to assist in internal affairs
investigations.  The Court determined
that as "[t]here is no dispute that government employees performing such
work are entitled to seek the protection of qualified immunity," those
acting on the government's behalf should be entitled to that same protection.  Id.  
 
[11] A few
immaterial differences in the causes of action, not worth reciting here, have
no bearing on the court's decision.  
 
[12] The Appeals
Court remanded Joss's case for consideration of whether Mackie had alleged any
violation of a clearly established statutory or constitutional right for the
purpose of determining whether qualified immunity applied.
 
[13] In his
complaint, Mackie alleged that Joss "was hired by the [DOC] as a
[qualified examiner] and assigned to interview [Mackie] . . . by a
private firm, which is subject to [a] contract [with], hired by and paid by the
DOC."  The DOC, in its amicus brief,
similarly explains:  "The DOC
contracts with a vendor for the provision of [qualified examiner] services.
. . .  The [qualified
examiners] are paid for their services through DOC's contract with its
vendor."
 
[14] We recognize
that Joss is also protected by the litigation privilege for reasons discussed
below.  Because a qualified examiner's
report must be filed with the court in advance of trial, G. L.
c. 123A, § 13 (a), the "reports are admissible at the trial
of the petition," Johnstone, 453 Mass. at 549, and qualified examiners may
testify at trial.  Accordingly, they are
protected by the litigation privilege. 
See Bassichis, 490 Mass. at 152, 158 (privilege protects testifying
witnesses for communications made during judicial proceeding and conduct during
course of litigation).  
 
[15] Mackie
continues to argue that because the defendants only moved to dismiss the
complaints on qualified immunity grounds, any alternative immunity theories
have been waived.  However, as noted
earlier, both defendants raised the issue of absolute quasi judicial immunity
at the hearings on their motions to dismiss. 
The litigation privilege extends to witnesses in judicial proceedings,
who are "absolutely privileged" to publish even defamatory statements
related to the proceedings, as their testimony is essential to the
"administration of justice." 
Restatement (Second) of Torts § 588 & comment a (1977).  Furthermore, "we may consider any ground
apparent on the record" that supports the trial court's decision.  Feeney v. Dell Inc., 454 Mass. 192, 211
(2009).  
 
[16] See, e.g.,
LeSage, petitioner, 488 Mass. 175, 177 (2021) (two qualified examiners produced
differing opinions as to petitioner's possible sexual dangerousness); Chapman,
482 Mass. at 297 (both qualified examiners concluded that defendant was not
sexually dangerous); McIntire, petitioner, 458 Mass. 257, 259 (2010), cert.
denied, 563 U.S. 1012 (2011) (same); Johnstone, 453 Mass. at 546 (same).
 
[17] Mackie
argues against immunity, claiming that potential liability would deter
negligent or fabricated reports and perjury. 
While we acknowledge the public policy concerns surrounding immunity in
such cases, we note that "our judicial system has inherent safeguards that
minimize the risk of decisions based on inaccurate, misleading, or negligently
conducted evaluations."  LaLonde,
405 Mass. at 212.  Additionally,
G. L. c. 123A, § 12 (d) (3), provides respondents with
the right to cross-examine witnesses who testify against them to highlight any
deficiencies in the witnesses' reports or testimony.  LaLonde, supra.  Furthermore, respondents also have the right
to "seek appellate review," providing an additional safeguard against
decisions based on negligent or fabricated reports.  Id. at 213. 
In summary, various procedural protections exist to shield respondents
from the risk that a probable cause expert might intentionally misrepresent facts
or act improperly during SDP commitment proceedings.
 
[18] Because we
determine that Rouse-Weir is protected by the litigation privilege, we do not
reach the questions whether a probable cause expert under G. L.
c. 123A is entitled to absolute prosecutorial immunity, quasi judicial
immunity, qualified immunity, or any other form of immunity.